UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2005 JAN 18 P 4:08
U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| JOHN DIOSA<br>　　Petitioner<br><br>　　v.<br><br>BRUCE CHADBORNE<br>DISTRICT DIRECTOR<br>U.S. IMMIGRATION AND<br>CUSTOMS ENFORCEMENT<br>　　Respondent | )<br>)<br>)<br>)<br>)<br>)  NO. 05-10103 RGS<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION FOR EMERGENCY STAY OF REMOVAL

Now Comes, John Diosa ("Petitioner"), by and through Counsel, and respectfully moves this Honorable Court for an Emergency Stay of Deportation, based on Motion to Reopen based on Ineffective Assistance of Counsel, Asylum, Adjustment of Status and New Evidence, pending before the Board of Immigration Appeals.

1. The Petitioner, John Diosa, is a resident of Rhode Island, and is presently in the custody of the U.S. Immigration and Customs Enforcement Agency. On January 18, 2005, Petitioner was transferred to Louisiana for Venue. On January 14, 2005, a Petitioner filed a Writ of Habeas Corpus with this court.

2. The Respondent, Bruce Chadborne, is the District Director for the U.S. Immigration and Customs Enforcement Agency, District of Boston.

SUMMARY OF ISSUE

3. On December 23, 2004, Petitioner filed a Motion to Reopen with the Board of Immigration Appeals on the basis of an

1

Asylum claim and Ineffective Assistance of Counsel, *Lozada* claim.

4. The Motion to Reopen is currently pending before the BIA.

5. Petitioner was transferred to Louisiana for Venue on January 18, 2005. Petitioner is scheduled to be deported on January 24, 2005.

6. Petitioner's Motion to Reopen with the BIA is a new action and all administrative remedies have been exhausted.

## ANALYSIS

7. The Petitioner moves this Honorable Court to grant this request to stay removal pending the outcome of Petitioner's Motion to Reopen and Remand, filed with the Board of Immigration Appeals.

8. For an Emergency Stay of Removal to be granted, Petitioner must demonstrate: 1) he will likely succeed on the merits; 2) he will suffer irreparable harm; 3) the harm outweighs any potential harm that would arise from granting the stay; and 4) the stay would serve the public interest. Arevalo v. Ashcroft, 344 F.3d 1, 7, 9 (1st Cir. 2003).

9. Petitioner will likely succeed on the merits.

   a. Petitioner's Immigration Proceedings will likely be reopened and remanded because Petitioner will likely succeed on his Lozada claim for ineffective assistance of counsel. Petitioner suffered from ineffective assistance of counsel and pursuant to Matter of Lozada, 19 I&N Dec. 637 (BIA 1988) aff'd 857 F.2d 10 (1st Cir. 1988). Petitioner was seriously prejudiced because prior counsel did not pursue all of Petitioner's claims and introduce all available evidence.

   b. Petitioner's Immigration Proceedings will likely be reopened and remanded because Petitioner will likely succeed on his claim for Asylum. Petitioner fears returning to Colombia because he will be persecuted. Pursuant to 8 C.F.R. §1003.2(c)(3)(ii) Petitioner should be allowed to reopen the Deportation

Proceedings and file for Asylum and Withholding of Removal. According to 8 C.F.R. § 1003.2(c)(3)(ii) the time and numerical limitations established in 8 C.F.R. § 1003.2(c)(2) do not apply if the basis of the Motion to Reopen is to apply for Asylum or Withholding of Removal pursuant to INA § 241(b)(3) and "is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." There are several pieces of material evidence regarding changed circumstances that were not available at the time of the original proceedings. Subsequent to the Deportation Order against Respondent several members of his family have been threatened and murdered in Columbia.

c. Petitioner's Immigration Proceedings will likely be reopened and remanded because Petitioner has a pending I-130 with a 212(h) waiver with the Service. Petitioner has a United States Citizen wife and two United States Citizen children.

10. Petitioner will suffer irreparable harm if Petitioner is deported from the United States before the Board of Immigration Appeals renders a decision on Petitioner's Motion to Reopen and Remand to the Immigration Judge because Petitioner will be unable to pursue benefits and remedies he is eligible for including *Lozada*, Asylum and Adjustment of Status.

11. The harm Petitioner will suffer far outweighs any potential harm that would arise from granting the stay. If Petitioner is deported before the BIA rules on his Motion to Reopen and Remand, Petitioner will lose any eligibility to Lozada, Asylum and Adjustment through an I-130. Further, because Petitioner suffered from ineffective assistance of counsel, Petitioner's Sixth Amendment Right to Counsel and Petitioner's Due Process Rights have been abridged. This harm to Petitioner clearly outweighs any harm in granting the stay. Petitioner is detained by ICE and in not manner is he a violent person. By extending a Stay until the BIA rules on the Motion to Reopen and Remand, a grave injustice to Petitioner will be averted and no harm would arise.

12. The public interest would be served if the Stay is Granted.

   a. Petitioner's wife and children will become charges of the state if Petitioner is deported from the United States. This Stay will serve the public interest because if the Motion to Reopen and Remand is granted by the BIA this family will not become charges of the state.

   b. The public interest will be served because if the Stay is granted, it will ensure Petitioner's Sixth Amendment Right to Counsel and Due process Rights are not violated.

## CONCLUSION

30. Based upon the above stated facts, Petitioner prays that this court will grant his request for an Emergency Stay, where removal under the circumstances would amount to a violation of his Constitutional rights.

Respectfully Submitted,

Jeff Ross, Esq.
Ross & Associates
20 Park Plaza, Suite 633
Boston, MA 02116
(617) 338-4040
BBO:  648972

I hereby certify that a true copy of the above document was served upon Office of the District Counsel, Department of Homeland Security, JFK Building, Room 425, 15 New Sudbury Street, Boston, MA 02203; the attorney of record for each party by mail on January 14, 2005.

*[signature]*

# DECLARATION OF JOHN DIOSA

I, JOHN DIOSA declare and say:

1. I am a native and citizen of Colombia.

2. I was born on December 12, 1957 in Medellin, Colombia.

3. My wife Edith and I met with Attorney Watt on March 23, 1987. I told him about my immigration situation and he agreed to represent me in the matter.

4. I did not retain Attorney Watt as my Attorney until I was placed in Deportation Proceedings in November of 1993. We agreed that I would pay him $275 per court appearance. I retained him by giving him a check for around $500.

5. Attorney Watt did not pursue all of my possible remedies and benefits when he represented me in Immigration Court. I was eligible for an I-130 petition with a 212(h) waiver and Asylum.

6. I did not realize that my prior counsel was ineffective in my representation until December 22, 2004, when my wife met with the Attorney who is representing me in this matter. That is when I learned that I was eligible for other benefits including Asylum and an I-130 petition with a 212(h) waiver.

7. I have two United States citizen children. I have a United States Citizen son, John Michael Diosa, who was born on September 28, 1987 in Providence, RI. I have a United States Citizen daughter, Tiffany Lee Diosa, who was born on September 6, 1990 in Providence, RI

8. If I am removed from the United States, I am afraid my children will become wards of the state.

9. If I am removed from the United States I am afraid my wife will not be

able to care for my children alone and they will have a difficult life because of it.

10. If I am removed from the United States, it will be an extreme and unusual hardship on my United States Citizen children.

11. I am married to a United States Citizen.

12. There is currently an I-130 petition on my behalf pending with the Service.

13. If I am removed from the United States, it will be an extreme and unusual hardship on my United States Citizen wife.

14. I am a person of good moral character.

15. I have one criminal conviction for possession of cocaine with intent to distribute in the United States from 1983.

16. I made a terrible mistake and have always regretted what I did.

17. I feel safe in the United States because my family was threatened and my uncle and cousins were murdered in Colombia.

18. I fear that if I return to Colombia I will be persecuted by paramilitary and guerrilla groups in Colombia because of my political opinion and membership in a social group.

19. When I returned to the United States May of 1988 I was threatened by security forces at the airport in Bogota. The head of the Airport's security learned I had a fraudulent passport. He threatened and extorted about $1000 from me. He told me that if I did not give him $1000, then he would arrest me and not allow me leave Colombia. He told me never return to Colombia. I am afraid this was related to my family somehow.

20. In 1993, my mother and step father were terrorized by a paramilitary group in Medellin, Colombia. My step-father is a medical doctor, and my mother is a nurse. They operated a small health clinic named "La casa de la salud" in Medellin. My parents were blackmailed and terrorized by a paramilitary group because they opposed the guerrilla paramilitary group's political doctrine. The group began to extort money from my parents and began to threaten to murder them. The threats became so severe that my parents abandoned their medical practice and moved to Bogota, Columbia to live with my. After a year, my parents returned to Medillin, but are still afraid they will be murdered. They never reopened their clinic.

21. I have several family members that I believe have been targeted and murdered by paramilitary groups in Colombia because of their political activity. Three of my cousins have been murdered, Edgar Diosa, Eduart Deleon Ortiz in May of 2000, and Fernando Figueroa Ortiz in December of 1993.

22. My step father's brother, David Orrego, was abducted by guerillas in July of 2001. He was working as an Electrical Engineer when he was kidnapped and I believe murdered by guerrillas. No ransom was ever asked for him and his body has never been found.

23. My brother, Jorge Ivan Diosa Ortiz was granted asylum in Costa Rica on July 21, 2004. My brother granted asylum because of threats and extortion by Colombian guerrillas. My brother fled Colombia after he was continually threatened by Colombian paramilitary guerillas and because they extorted money from him.

24. I wish to file a claim for Asylum in the United States.

25. I fear that if I return to Colombia I will be persecuted by these paramilitary

groups.

26. I wish to file for Asylum now because there are changed circumstances now from when I left Colombia and entered the United States. The guerrilla paramilitary groups have become much more powerful now then when I left Colombia and entered the United States. Paramilitary groups are now involved in the drug trade and control many areas of rural Colombia. The number of kidnappings and murders committed by paramilitary groups has increased significantly since I left Colombia.

27. The paramilitary groups have gotten much more sophisticated in how they track people they are targeting. These paramilitary groups can successfully track people throughout Colombia, which was not the case when I left Colombia for the United States.

28. I am afraid to return to Colombia because my family has been persecuted by a paramilitary group and I fear I will be persecuted as well if I return to Columbia.

29. I did not abandon my residency in the United States. I intended to return to the United States when I could save up enough money. I thought I had been ordered deported. How could I have abandoned my residency if I believed I was deported.

31. The most painful event I have ever experienced was not witnessing the birth of my son. I wanted to return to the United States to watch my son's birth on September 28, 1987. I could not return to the United States to witness the birth of my son because I did not yet have enough money saved. I was waiting for the liquidation of a company I had an investment in before I returned to the United States. The liquidation was scheduled for January of 1988.

34. I was confused at my Immigration Proceedings because I did not have a Spanish Interpreter and my English was not that good.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 11, 2005.

John Diosa